**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **v.** | :  **Case No. 21-cr-332-PLF** |
| **PAUL RUSSELL JOHNSON,** | : |
| | : |

**CONSENT MOTION TO MODIFY CONDITIONS OF RELEASE**

Paul Russell Johnson, through undersigned counsel, moves this Court to modify its May 7, 2021 Order Setting Conditions of Release (ECF No. 20) under 18 U.S.C. § 3145(a). Specifically, Mr. Johnson requests that this Court: 1) discontinue the use of an ankle monitor for location monitoring in favor of SmartLINK location monitoring, 2) allow Mr. Johnson to move without restriction, while he is at his residence, which includes his 14-acre farm, and 3) allow Mr. Johnson to attend the football games and practices for his son and stepson.

In support of this Motion, Mr. Johnson states as follows:

**FACTUAL BACKGROUND**

1. On April 12, 2021, the United States District Court for the District of Columbia issued an arrest warrant charging Mr. Johnson for acts allegedly committed in Washington, D.C. on January 6, 2021.

2. On April 13, 2021, FBI agents arrested Mr. Johnson at his Virginia home in the early morning hours. According to the Pretrial Services Report (ECF No. 13), Mr. Johnson has no criminal convictions.

3. On April 14, 2021, Mr. Johnson appeared in federal court in the Eastern District of Virginia to be transferred to Washington, DC regarding this case.

4.      On April 29, 2021, Mr. Johnson's detention hearing was held before a United States Magistrate Judge in this District. The Magistrate Judge ordered that Mr. Johnson be released subject to the condition, among others, that he submit to a location monitoring program and that he be restricted to his residence at all times with certain exceptions, such as employment and church services. The Order Setting Conditions of Release (ECF No. 20) did not specify the type of location monitoring required, define the perimeter of Mr. Johnson's 14-acre residence, or allow for Mr. Johnson to attend football games and practices for his son and stepson.

## Problem with the Ankle Monitor and Proposed Solution

5.      Mr. Johnson owns and operates a tree trimming service, E & E Tree Services, in Williamsburg, Virginia. As part of his work, Mr. Johnson climbs trees using boots and gear that must be wrapped securely around his ankles. Because of the ankle monitor, he has found it difficult to secure the boots and gear around his ankle, which puts him at an increased risk of falling out of a tree. *See* Ex. 1 (photos of tree climbing gear and ankle monitor). Being able to work safely is essential to Mr. Johnson's livelihood and the livelihood of his family.

6.      In order to minimize the potential safety risk and discomfort to Mr. Johnson from his ankle monitor, the parties request that the Court modify Mr. Johnson's location monitoring condition to provide that Mr. Johnson shall be monitored via SmartLINK, rather than through an ankle monitor. Unlike an ankle monitor, SmartLINK is not a device affixed to Mr. Johnson's person.  Rather, SmartLINK is a cell phone application that combines GPS monitoring with biometric scanning.  Specifically, SmartLINK uses GPS technology to capture location information and biometrics to verify identity during remote check-ins.  The SmartLINK application provides for up to five remote check-ins per day.  The parties have confirmed with the Pretrial Services Offices in both Washington, D.C., and the Eastern District of Virginia that this

technology is available in the supervising jurisdiction (the Eastern District of Virginia), and that neither Office has any opposition to modifying the location monitoring condition to provide for SmartLINK monitoring rather than an ankle monitor.

## Maintaining a 14-Acre Farm

7.      Mr. Johnson resides at a 14-acre farm property in Lanexa, Virginia with his fiancée, his eight-year-old son (over whom he has sole physical custody) and his fiancée's two sons—one who is nine years old and the other who is 14 years old.[1]

8.      Mr. Johnson has principal responsibility for the care and upkeep of his 14-acre farm property, (*see* Ex. 2 attached property information) which includes: (a) providing feed and water to chickens, turkeys, geese, pigs, and goats on a daily basis, as well as cleaning out their pens; (b) bush hogging the field on the property; (c) picking up the animal feed from the farm supply store; (d) mowing the lawn area on the property; (e) going to the dump to dispose of garbage because there is no trash pick up where Mr. Johnson lives; (f) catching any animals that escape from their pens, which may require going to the wooded area of the property; (g) entering the wooded area of the property to locate his sons if they are playing there and to ensure that hunters are not venturing into the wooded area of the property (especially for the safety of his sons); (h) repairing the animal pens if the animals have made an escape route; (i) moving the goat pen to give them a wooded area in which to forage; and (j) access to the woodlot on the property to dump wood from work and to split firewood.

9.      Due to the location monitoring device's limited tracking range, the Pre-Trial Services Office placed restrictions on Mr. Johnson's ability to go beyond certain portions of his

---

[1] For the sake of simplicity and because he considers his fiancée's sons his own children, all of them will be referred to as his sons or stepsons.

property. Although Mr. Johnson does not know the precise contours of these restrictions, he was told by his Pre-Trial Services Officer that he cannot go past the chicken coop, which is mid-way down his driveway, and that he cannot go in the field. He also cannot go into the woods.

10.     Such restrictions hinder Mr. Johnson's ability to take care of the farm, his animals, and his sons in the above-mentioned ways.

11.     As a result, Mr. Johnson respectfully requests that the Court clarify that Mr. Johnson is permitted the freedom to move on his property, which includes his 14 acres of farm.

**Football and Fatherhood**

12.     Mr. Johnson is a devoted father to his sons. He assists the football team on which his two of his sons play. He respectfully requests this Court to allow him to transport his sons to and from games and practices (including conditioning camp). The football league starts its practices (i.e., conditioning camp) on June 7, 2021. These practices will continue every Monday through July 19, 2021 from 7:00 p.m. – 8:30 p.m. From August 9, 2021 to September 7, 2021, football practice is Monday through Friday from 6 p.m. – 8 p.m. After September 7, 2021, practice is every Monday, Tuesday, and Thursday from 6:00 p.m. – 7:45 p.m. Fridays are a makeup practice day in the event practice is canceled for inclement weather. Games are every Saturday from September 11, 2021 through October 30, 2021, and possibly through November 20, 2021 if the team makes the playoffs. Mr. Johnson's son and his fiancée's son are sophomores, so their games are from 11:00 a.m. – 12:15 p.m., but they have to be on the field an hour early, so they are there from 10:00 a.m. – 12:15 p.m. Mr. Johnson respectfully requests that this Court allow him to participate in his son's and stepson's lives through attending their football practices and games.

**Pre-Trial Services' and Government's Positions**

13.     Counsel for Mr. Johnson contacted his Pre-Trial Services Officers in Virginia and in Washington, D.C. Both agree that Mr. Johnson has complied with his conditions of release to date—totaling approximately 31 days from May 7 to June 7.  Neither the Pretrial Services Office in Washington D.C. nor the Pretrial Services Office in the Eastern District of Virginia (the supervising jurisdiction) oppose the proposed modifications, provided that Mr. Johnson provide his Pretrial Services Officer with advance notice of his sons' football practice and game schedules, and that Mr. Johnson provide at least 24 hours' notice if there are any changes to the aforementioned schedules.

14.     The government consents to the following proposed modifications to defendant's release order: (1) that defendant be monitored via the SmartLINK cell phone application rather than by ankle monitor; (2) that defendant be permitted to travel freely within the bounds of his 14-acre property; and (3) that defendant be permitted to transport his sons to and from football practices and games, provided that defendant provide his Pretrial Services Officer with his son's and stepson's football practice and game schedules within three days of the Court's entry of an order modifying defendant's release conditions. The practice and game schedules shall include addresses for all fields/stadiums. Further, defendant shall provide his Pretrial Services Officer with 24 hours' notice regarding any changes to the aforementioned practice and game schedules.

15.     In accepting these proposed conditions, Mr. Johnson reserves the right to file a motion to further modify his conditions under 18 U.S.C. § 3145(a).

**BAIL REFORM ACT**

16.     As the Court knows, the Bail Reform Act of 1984 requires pretrial release under the least restrictive conditions that will reasonably assure the accused's appearance at court

proceedings and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). This Court has the authority to amend the conditions of a release order to conform to the Bail Reform Act's directives. 18 U.S.C. § 3145(a)(2). The Bail Reform Act's directives are rooted in the Fifth Amendment's prohibition of deprivation of liberty without due process and the Eighth Amendment's prohibition against excessive bail. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations omitted). Additionally, the Bail Reform Act recognizes that accusations in an indictment are not convictions and the accused is presumed innocent. *See* 18 U.S.C. § 3142(j) (stating that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence"). Moreover, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (internal citation omitted). Thus, the Court has both a statutory and constitutional mandate to release the accused under the least restrictive conditions that will reasonably assure his appearance in court and protect the safety of the community. The parties have reached an agreement regarding the modification of Mr. Johnson's release conditions and urge the Court to allow the parties to effect this agreement.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Mr. Johnson respectfully requests that the Court modify his current release conditions under 18 U.S.C. § 3145(a) to: 1) discontinue the use of an ankle monitor for location monitoring in favor of SmartLINK location monitoring, 2) allow Mr. Johnson to move without restriction, while he is at his residence, which includes his 14-acre farm, and 3) allow Mr. Johnson to attend the football games and practices for his son and stepson, provide that Mr. Johnson provide his Pretrial Services Officer with copies of his sons' practice and game schedules within three days of the Court's entry of an order modifying Mr. Johnson's release

conditions, and that Mr. Johnson provide his Pretrial Services Officer with 24 hours' notice of any changes to the football practice and game schedules.

Dated: June 7, 2021

Respectfully submitted,

_/s/_
Kobie Flowers (Bar No. 991403)
BROWN GOLDSTEIN & LEVY, LLP
1717 K Street, NW, Suite 900
Washington, DC 20006
Tel: (202) 742-5969
Fax: (202) 742-5948
kflowers@browngold.com

Monica Basche (Bar No. MD0105)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
mbasche@browngold.com

_Counsel for Paul Russell Johnson_