UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 21-cr-332-PLF-1 |
| PAUL RUSSELL JOHNSON, | : | |
| Defendant. | : | |

**PAUL RUSSELL JOHNSON'S
MOTION TO MODIFY CONDITIONS OF RELEASE**
(Removal of home detention and location monitoring)

Paul Russell Johnson, through counsel, moves this Court to modify the May 7, 2021 Order Setting Conditions of Release (ECF No. 20) under 18 U.S.C. § 3145(a). Specifically, Mr. Johnson requests that this Court remove the home detention requirement and discontinue location monitoring. In support of this Motion, Mr. Johnson states as follows:

**FACTUAL BACKGROUND**

On April 12, 2021, the United States District Court for the District of Columbia issued an arrest warrant charging Mr. Johnson for acts allegedly committed during the Stop the Steal rally in Washington, D.C. on January 6, 2021. On April 13, 2021, agents of the Federal Bureau of Investigation ("FBI") arrested Mr. Johnson at his Virginia home in the early morning hours. According to the Pretrial Services Report (ECF No. 13), Mr. Johnson has no criminal convictions. Yet, during his arrest, law enforcement arrived at Mr. Johnson's residence with military vehicles and weapons drawn. Not only did law enforcement wake up and order Mr. Johnson out of his house, but they also woke up and ordered Mr. Johnson's fiancée and their three, barely clothed kids out into the morning cold. On April 14, 2021, Mr. Johnson appeared in federal court in the Eastern District of Virginia to be transferred to Washington, DC regarding this case.

On April 30, 2021, a grand jury indicted Mr. Johnson along with Stephen Chase Randolph, for acts allegedly committed during the Stop the Steal rally in Washington, D.C. on January 6, 2021.[1] One day earlier, on April 29, 2021, Mr. Johnson's detention hearing was held before a United States Magistrate Judge in this District. The Magistrate Judge ordered that Mr. Johnson be released subject to the conditions, among others, of home detention and a location monitoring program. The Order Setting Conditions of Release (ECF No. 20) did not specify the type of location monitoring required.

### Mr. Johnson's strong ties to the community, church, and family

Mr. Johnson has many ties to the community in which he lives. He is a 35-year-old native Virginian and has lived in and around York County, Virginia his entire life. He has no passport and has never been out of the country. Mr. Johnson resides on a 14-acre family farm property in Lanexa, Virginia with his fiancée, his eight-year-old son (over whom he has sole physical custody) and his fiancée's two sons, one who is nine years old and the other who is 14 years old.[2] Mr. Johnson has principal responsibility for the care and upkeep of his 14-acre family farm property, which includes: (a) providing feed and water to chickens, turkeys, geese, pigs, and goats on a daily

---

[1] The Indictment alleges eight counts against Mr. Johnson: (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); (3) assaulting, resisting or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (4) entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (5) engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon and resulting in significant bodily injury, in violation of 18 U.S.C. §§ 1752(a)(2) and(b)(1)(A); (6) engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon and resulting in significant bodily injury, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A), and (b)(1)(B); (7) disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (8) act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C.§ 5104(e)(2)(F).

[2] For the sake of simplicity and because he considers his fiancée's sons his own children, all of them will be referred to as his sons or stepsons.

basis, as well as cleaning out their pens; (b) bush hogging the field on the property; (c) picking up the animal feed from the farm supply store; (d) mowing the lawn area on the property; (e) going to the dump to dispose of garbage because there is no trash pick up where Mr. Johnson lives; (f) catching any animals that escape from their pens, which may require going to the wooded area of the property; (g) entering the wooded area of the property to locate his sons if they are playing there and to ensure that hunters are not venturing into the wooded area of the property (especially for the safety of his sons); (h) repairing the animal pens if the animals have made an escape route; (i) moving the goat pen to give them a wooded area in which to forage; and (j) access to the woodlot on the property to dump wood from work and to split firewood.

Mr. Johnson has owned and operated a tree trimming service, E & E Tree Services, in Williamsburg, Virginia for nine years. His father started the company, and Mr. Johnson began working there when he was 15 years old. He took over the company in 2012, and he has operated it successfully ever since. The continued success of his business is important to his livelihood and the livelihood of his family. He has many regular customers who depend on his services, as well as customers who request emergency services to remove fallen trees from their homes or vehicles, which often occur after work hours. Due to the restrictions placed on him as part his conditions of release, Mr. Johnson has been unable to assist customers through his emergency services two occasions.

Mr. Johnson is a devoted father to his son and stepsons. He assists the football team on which his son and stepson play and takes his son and stepson to and from practices every weekday evening in the Fall and games every Saturday in the Fall. Mr. Johnson is so devoted to his son and stepsons that he sought a Court order modifying his conditions of release, so that he could be present in their lives by attending their football practices and games.

Besides managing his 14-acre family farm, owning and operating his own business, and assisting with his son and stepson's football team, Mr. Johnson is very active in his church, Journey Christian Fellowship, attending services on Wednesdays and Sundays with his family.

### **Problems with SmartLINK location monitoring**

Initially, the Pre-Trial Services Office utilized an ankle monitor to track Mr. Johnson's location at all times. Because the ankle monitor interfered with his ability to safely operate his tree trimming service and in an effort to avoid unnecessary litigation, Mr. Johnson filed a Consent Motion to Modify Conditions of Release on June 7, 2021, requesting that he be monitored using SmartLINK. SmartLINK is a mobile application that requires five check-ins per day using the Global Positioning System monitoring and biometric scanning features on Mr. Johnson's cell phone. On June 8, 2021, the Court granted Mr. Johnson's Consent Motion. (ECF No. 31). Now that Mr. Johnson has been using SmartLINK for more than a month, he has learned that the daily check-ins are randomized and can happen at any time—day or night. This has resulted in Mr. Johnson being woken up in the middle of the night and interrupted while he works trimming tree branches. In sum, SmartLINK is more burdensome than the ankle monitor—neither condition is the least restrictive condition of release available to the Court under 18 U.S.C. § 3142.

### **Pre-Trial Services' and Government's Positions**

Counsel for Mr. Johnson contacted his Pre-Trial Services Officer ("PTSO") in Washington, D.C. She agrees that Mr. Johnson has complied with his conditions of release to date—totaling approximately 70 days from May 7 to July 16. While the PTSO is inclined to keep Mr. Johnson on SmartLINK monitoring because of the assault charge against him, she agrees that SmartLINK is actually more burdensome than an ankle monitor. Counsel for Mr. Johnson contacted the

4

government for its position on this Motion, and it stated that it intends to oppose Mr. Johnson's Motion.

## ARGUMENT

The Bail Reform Act of 1984 requires pretrial release under the least restrictive conditions that will reasonably assure the accused's appearance at court proceedings and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). This Court has the authority to amend the conditions of a release order to conform to the Bail Reform Act's directives. 18 U.S.C. § 3145(a)(2). The Bail Reform Act's directives are rooted in the Fifth Amendment's prohibition of deprivation of liberty without due process and the Eighth Amendment's prohibition against excessive bail. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations omitted). Additionally, the Bail Reform Act recognizes that accusations in an indictment are not convictions, and the accused is presumed innocent. *See* 18 U.S.C. § 3142(j) (stating that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence"). Moreover, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (internal citation omitted). Thus, the Court has both a statutory and constitutional mandate to release the accused under the least restrictive conditions that protect the safety of the community.[3]

---

[3] The Bail Reform Act also requires that the court impose conditions that will reasonably assure the defendant's appearance in court. The government has never asserted that Mr. Johnson is a flight risk, nor could it, let alone establish that he is by a preponderance of the evidence. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)). As discussed above, Mr. Johnson has strong ties to his community where he has lived his entire life, including his family, a 14-acre family farm property, a business, and church and his children's sporting events that he regularly attends. He also does not have a passport and has never travelled outside of the United States, nor has he missed a court appearance. He retained counsel to face and contest the allegations in the Indictment—not run from them. The government, therefore, can make no colorable argument that Mr. Johnson is a flight risk.

In determining the appropriate conditions of release, a court shall consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4). These factors support the modification Mr. Johnson seeks—and fail to establish by clear and convincing evidence that Mr. Johnson requires home detention and location monitoring to ensure the safety of any other person or the community. 18 U.S.C. § 3142(e).

**A.     Nature and circumstances of the offense charged.**

The first factor—the nature and circumstances of the offense charge—weighs in favor of the relief Mr. Johnson seeks. When examining the nature and circumstances of the offense charged, courts consider whether the offense charged is a crime of violence. 18 U.S.C. § 3142(g)(1). Out of the eight offenses with which Mr. Johnson is charged, only one—the alleged violation of 18 USC §§ 111(a)(1) & (b)—may arguably be a crime of violence, though it is an open question in the U.S. Circuit Court for the District of Columbia whether § 111(b) is categorically a crime of violence. *See United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at *6 (D.D.C. Apr. 12, 2021) (noting the "D.C. Circuit has not yet weighed in" but also recognizing that "every circuit to address the issue" has concluded that § 111(b) constitutes a crime of violence).

Even if this Court ultimately concludes that § 111(b) is a crime of violence, this fact does not automatically preclude the relief Mr. Johnson requests here. In assessing this factor, this Court may consider the factors Chief Judge of this District, Beryl Howell, set forth in *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662 (D.D.C. Feb. 26, 2021), to help "differentiate the severity of the conduct among the hundreds of defendants charged in connection with the events on January 6." *United States v. Owens*, No. 21-CR-286 (BAH), 2021 WL 2188144,

at *7 (D.D.C. May 28, 2021) (quoting *Chrestman*, 2021 WL 765662, at *7–8). These factors include whether the defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; or (6) expressed "words" and made "movements during the riot" that included "breach[ing] the interior of the Capitol building," "injur[ing], attempt[ing] to injure, or threaten[ing] to injury others, or . . . damag[ing] or attempting to damage federal property," "actively threaten[ing] or confront[ing] federal officials or law enforcement" or "otherwise promot[ing] or celebrat[ing] efforts to disrupt the certification of the electoral vote count." *Chrestman*, 2021 WL 765662, at *7–8. The only factors that are arguably implicated in Mr. Johnson's case are one and six.

The first factor—whether the defendant has been charged with felony or misdemeanor offenses—weighs in favor of removing the home detention and location monitoring requirements from Mr. Johnson's conditions of release. While Mr. Johnson has been charged with felony offenses, courts routinely release individuals charged with felonies on their own recognizance, including in cases in which the defendant is charged with felonies arising out of the events of January 6th. *See* Order Setting Conditions of Release, *United States v. Kenneth Joseph Owen Thomas*, 21-mj-00448 (June 3, 2021), ECF No. 12 (ordering Thomas's release with no location restriction or location monitoring); Order Setting Conditions of Release, *United States v. Jason Douglas Owens*, 21-mj-00376 (Apr. 21, 2021), ECF No. 7 (ordering Owens's release with no location restriction or location monitoring and weekly check-in call with Pre-Trial Services); Order Setting Conditions of Release, *United States v. David Alan Blair*, 21-cr-00186 (Feb. 22, 2021),

ECF No. 6 (ordering Blair's release with no location restriction or location monitoring); Order Setting Conditions of Release, *United States v. Aaron Mostofsky*, 21-cr-00138 (Jan. 25, 2021), ECF No. 5 (ordering Mostofsky's release with no location restriction or location monitoring and weekly check-in call with Pre-Trial Services); Order Setting Conditions of Release, *United States v. Matthew Council*, 21-cr-00207 (Jan. 21, 2021), ECF No. 3 (ordering Council's release with no location restriction or location monitoring); *see also* Order Setting Conditions of Release, *United States v. Matthew Capsel*, 21-mj-00122 (Apr. 16, 2021), ECF No. 20 (ordering Capsel's release with curfew requirement and no location monitoring). Therefore, this Court should not place much weight on this factor. Not to mention, only one of the felonies with which Mr. Johnson is charged is arguably a crime of violence—the remainder involve alleged trespassing and interference with government proceedings or law enforcement. Further, Mr. Johnson has no criminal history or history of violent conduct and has complied with the conditions of his release.

        The sixth factor—the expression of certain words and movements during the events of January 6th—also weighs in favor of the relief Mr. Johnson seeks here. While Mr. Johnson had a megaphone, he used it to amplify his voice in protest against the government and U.S. Capitol Police officers. While Mr. Johnson arguably confronted U.S. Capitol Police officers, he never threatened an officer, nor did he threaten to injure others or damage or attempt to damage federal property. The government alleges that Mr. Johnson pushed and pulled a metal barricade into a U.S. Capitol Police officer, injuring her. But review of the video evidence shows that Mr. Johnson was not directly involved in this violent confrontation with the officers. In addition, Mr. Johnson never breached the interior of the Capitol building and, in fact, left the Capitol once the crowd began its assault on the Capitol building because he was concerned for his safety and the safety of his fiancée.

The other four factors weigh in favor of removing Mr. Johnson from home detention and location monitoring. Mr. Johnson did not engage in any prior planning; he did not come with weapons and tactical gear in preparation for storming the Capitol. He was in Washington, D.C. on January 6th to exercise his First Amendment right to engage in peaceful protest. He also did not carry or use a dangerous weapon, such as a "firearm, a large pipe, a wooden club, an axe handle, or other offensive-use implement." *Chrestman*, 2021 WL 765662, at *8. Nor is there any evidence that Mr. Johnson coordinated with other participants before, during, or after the rally. Finally, Mr. Johnson did not assume a formal or a de facto leadership role in the assault by encouraging the other participants' misconduct. He came to protest and got caught up in the energy of the crowd. Once he saw that the crowd had turned violent, he left the rally.

**B.     Weight of the evidence against the defendant.**

The second factor—the weight of the evidence against the defendant—also supports Mr. Johnson's modification request. The bulk of the evidence is video of the events of January 6th. Even if this evidence equates to "overwhelming evidence of guilt" (it does not), that does not mean that removing home detention and location monitoring from Mr. Johnson's conditions of release would not reasonably assure the safety of the community. *United States v. Taylor*, 289 F. Supp.3d 55, 66 (D.D.C. 2018). The weight of the evidence is also the "least important" factor out of all the § 3142(g) factors. *Klein*, 2021 WL 1377128, at *10.

**C.     History and characteristics of the defendant**

The third factor—the history and characteristics of the defendant—also weighs in favor of Mr. Johnson's request. As part of its examination of this factor, the Court must consider Mr. Johnson's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or

alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court also must consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." U.S.C. § 3142(g)(3)(B).

As discussed above, Mr. Johnson has strong ties to his community and is a devoted father and family man. He is a lifelong resident of the Lanexa, Virginia area. He currently lives on a 14-acre family farm with his fiancée, whom he has been in relationship with since 2015, and his son and two stepsons. Not only does he maintain and manage the farm, but he has owned and operated his own tree trimming business for nine years. He attends church with his family on Wednesdays and Sundays and assists with his son's and stepson's football team and takes them to and from practices and games on a near daily basis. He also has close relationships and regular contact with his parents, brother, and sister, all of whom live nearby. Moreover, it is undisputed that Mr. Johnson has essentially no criminal record; he has only a single misdemeanor marijuana possession conviction—a drug that is now legal for recreational use in 16 states and the District of Columbia—from 2013.  He has no ties to extremist groups like the Proud Boys or the Oath Keepers. At the time of his arrest, Mr. Johnson was not on probation, parole, or other release pending sentencing or the completion of a sentence in any jurisdiction. Mr. Johnson has flawlessly complied with his current conditions of release for 70 days. Put simply, Mr. Johnson's history and characteristics demonstrate that he is a responsible family man with strong ties to his community.

**D.      The nature and seriousness of the danger to any person that would be posed by the person's release.**

The fourth factor—the nature and seriousness of the danger that would be posed by Mr. Johnson's requested modifications to his conditions of release—weighs in his favor. Specifically

with regard to individuals charged base upon their participation in the Stop the Steal Rally on January 6, 2021, the D.C. Circuit has held that "a finding of dangerousness must be predicated on a <u>concrete</u> determination that the defendant poses a <u>continued</u>, 'identified and articulable threat to the community' or to another person." *Klein*, , 2021 WL 1377128, at *12 (quoting *Munchel*, 991 F.3d at 1282) (emphasis in original). The government cannot make this showing with regard to Mr. Johnson.

As discussed previously, Mr. Johnson has *no criminal history*, and certainly no history of violence, criminal or otherwise. Mr. Johnson's conduct on January 6th also stands in stark contrast to others who participated in events of that day. Mr. Johnson came to the Capitol with a megaphone to exercise his First Amendment right to protest; he did not bring any weapons with him, nor was he outfitted in a flack jacket or other military attire. He also did not enter the Capitol building and left the Capitol grounds when the crowd turned violent because he was concerned for his safety and the safety of his fiancée.

The Court must also consider the threat to the safety of an individual or the community in context. *Munchel*, 991 F.3d at 1280. In the context of the events of January 6th, Mr. Johnson came to the Capitol to protest the certification of the 2020 presidential election. He did not engage in any prior planning and did not bring any weapons with him. He was only there to exercise his First Amendment right to protest. There is arguably zero chance that the set of circumstances that transpired that day—a protest of the congressional certification of a presidential election at the U.S. Capitol—will occur at some point in the future. Because Mr. Johnson's conditions of release would still bar him from coming to Washington, D.C. (with certain exceptions), keeping Mr. Johnson on home detention and location monitoring is not necessary to mitigate this very specific risk—they are not the least restrictive conditions of release based on the facts.

Even if the context were viewed more broadly—that there is a risk that Mr. Johnson would assault a law enforcement officer generally—the government cannot prove by clear and convincing evidence that Mr. Johnson poses a risk to law enforcement. As discussed above, Mr. Johnson has no criminal history, let alone a history of violence, including law enforcement. Mr. Johnson posed no danger to his community before January 6, 2021, and he poses no danger to his community now. Even if he arguably were a danger to law enforcement (he is not), neither home detention nor SmartLINK do anything to prevent an individual from engaging in violent conduct—they only prove to show an individual's whereabouts after the fact. Home detention and SmartLINK, therefore, are not the least restrictive means that will protect the safety of the community.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Mr. Johnson respectfully requests that the Court modify his current release conditions under 18 U.S.C. § 3145(a) to remove the home detention requirement and discontinue location monitoring as the least restrictive means of complying with the Bail Reform Act.


Dated: July 16, 2021                                Respectfully submitted,


                                                    _____/s/_____
                                                    Kobie Flowers (Bar No. 991403)
                                                    BROWN GOLDSTEIN & LEVY, LLP
                                                    1717 K Street, NW, Suite 900
                                                    Washington, DC 20006
                                                    Tel: (202) 742-5969
                                                    Fax: (202) 742-5948
                                                    kflowers@browngold.com

Monica Basche (Bar No. MD0105)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
mbasche@browngold.com

*Counsel for Paul Russell Johnson*

13

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of this pleading was served on all counsel of record via the Court's electronic filing service.

Date: July 16, 2021                            */s/ Kobie Flowers*
                                                            Kobie Flowers