```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
                                        CR Action
               Plaintiff,               No. 1:21-332

          vs.                           Washington, DC
                                        September 23, 2021
PAUL RUSSELL JOHNSON - 1,
STEPHEN CHASE RANDOLPH - 2,                3:30 p.m.
          Defendants.
_____/


          TRANSCRIPT OF VIDEO STATUS CONFERENCE
        BEFORE THE HONORABLE PAUL L. FRIEDMAN
              UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:        HAVA ARIN LEVENSON MIRELL
                      ROBERT JUMAN
                      EMILY MILLER
                        U.S. ATTORNEY'S OFFICE
                        312 N. Spring St., Suite 1200
                        Los Angeles, CA 90012
                        213-894-0717


For Dft. Johnson:     KOBIE A. FLOWERS
                      MONICA BASCHE
                        BROWN GOLDSTEIN LEVY, LLP
                        1717 K Street, NW, Suite 900
                        Washington, DC 20006
                        202-742-5969


For Dft. Randolph:    ANGELA HALIM
                        FEDERAL COMMUNITY DEFENDER OFFICE PA
                        601 Walnut Street, Suite 501 West
                        Philadelphia, PA 19106
                        215-928-1100


Reported By:          LORRAINE T. HERMAN, RPR, CRC
                        Official Court Reporter
                        U.S. District & Bankruptcy Courts
                        333 Constitution Avenue, NW, Room 6720
                        Washington, DC 20001
                        202-354-3196
```

1                    **P R O C E E D I N G S**

2            COURTROOM DEPUTY:  We are ready to begin.  This is

3    Criminal Action 21-332, United States versus Paul Russell

4    Johnson and Stephen Chase Randolph.

5            For the United States I have Robert Juman, Hava

6    Levenson Mirell, Emily Moore [sic].  For defendant Johnson I

7    have Kobie Flowers and Monica Bashe.  For defendant Randolph

8    I have Angela Halim.  Our court reporter today is Lorraine

9    Herman.  All parties are present.

10           THE COURT:  And who's here from pre-trial?

11           COURTROOM DEPUTY:  We have nobody from pre-trial.

12           THE COURT:  Get somebody from pre-trial.  Since

13   they haven't submitted a report on one of the defendants, I

14   know that Nathan has been trying to communicate with them.

15   Well, Mr. Sidbury or --

16           COURTROOM DEPUTY:  Takeysha Robinson is the

17   supervisor.  I can request her as well.

18           THE COURT:  Okay.  Thanks.

19           COURTROOM DEPUTY:  Hold on one second.

20           (Break.)

21           THE COURT:  We can probably begin.  But the reason

22   I wanted to have someone from pre-trial here, is that there

23   is a written report from pre-trial with respect to

24   Mr. Randolph that was filed yesterday.  It indicates that

25   he's in full compliance with all of his conditions.

1          For some reason there wasn't a written report or

2     there hasn't been a written report.  With respect to

3     Mr. Johnson, I want to be brought up to date with where we

4     are with his compliance, particularly since some of the

5     conditions were changed at the last hearing.  So whenever

6     someone from pre-trial joins us, we will hear what they have

7     to say.

8          In the meantime, a couple of other things have

9     been filed fast and furiously in the last few hours.  There

10    was a motion -- not a motion but a response to my inquiry at

11    the last status conference about the Speedy Trial Act filed

12    by the government.  Then a little while ago Mr. Flowers

13    filed a motion to sever and a preliminary response to the

14    Speedy Trial Act.

15         I think the government will undoubtedly want time

16    to respond to the motion to sever in writing, and then maybe

17    Mr. Flowers would like to reply to that, and we can have an

18    argument on that question of severance.

19         So that's all I want to say at the moment.  And

20    other than that, perhaps, we can either set those dates now

21    or we can wait until the end of this hearing.  But first I

22    want to hear where we stand with respect to discovery and

23    where we stand with respect to other pre-trial matters.

24         I know that Mr. Johnson wants me to move forward

25    with the trial, and Mr. Flowers can speak briefly to that as

1    well, but I do think we need to -- since part of it's a

2    legal argument, I think the government should have an

3    opportunity to respond more formally, since the motion was

4    just filed.  What's the status?  How are things moving

5    along?  Where are things going?  Where does each side see

6    things going next?

7              So who wants to start?

8              MR. JUMAN:  Your Honor, if I may.  Robert Juman.

9              I will start with Mr. Randolph, because that might

10   be a simplier discussion.  Since our last hearing, which was

11   at the end of July, the government has provided additional,

12   specific discovery to the defendant to the incident with

13   which he is charged, additional videos, medical records

14   relating to one of the victim officers, as well as some of

15   the additional materials coming from the U.S. Capitol Police

16   regarding their investigations.

17             As the Court's aware, on September 20th, we filed

18   a status update for September, which attached to it updates

19   as of July and August regarding a broader Capitol riots'

20   discovery issue, an issue with which Ms. Miller, who is on

21   the call, is better equipped to discuss in detail.

22             The point there is that we've made significant

23   progress with respect to this larger discovery project,

24   which involves all of the Capitol riot evidence.  We have

25   provided in our written updates the specifics of what has

1    been produced, what we are working on in terms of two

2    large-scale projects, which we will make available to the

3    defense, large amounts of video and large amounts of

4    documents, in a format that will be usable by them and not

5    just dumped on them.

6            I spoke with Mr. Randolph's attorney as well.  As

7    the Court may know from our last hearing we've extended a

8    plea offer.  Ms. Helen is discussing that with her client

9    and I believe at least she and I are in agreement we would

10   like more time for her to have the opportunity to discuss

11   that with her client.

12           THE COURT:  Anybody else from the government want

13   to weigh in at the moment or shall I hear from Ms. Halim?

14           MS. HALIM:  Hearing nothing from the government,

15   Your Honor, good afternoon.  Angie Halim for Steven

16   Randolph.

17           Mr. Juman is correct.  There have been updated

18   discovery, supplemental discovery that the government has

19   provided.  The government did convey a written plea offer to

20   Mr. Randolph.  I started reviewing that with him and

21   discussing it, but we are in a position where we need some

22   additional time to continue those discussions, to continue

23   getting through all of the materials and figuring out what

24   the appropriate resolution is for Mr. Randolph.

25           THE COURT:  All right.  Mr. Flowers?

1          MR. FLOWERS:  Good afternoon, Your Honor.

2          I wish I could join with Ms. Halim and Mr. Juman

3     and give a rosy picture of where things are going, but I

4     don't think it is too bad.  I mean, where we are is this,

5     Your Honor, the government has been kind enough to provide

6     discovery from May 6th up to July 29th of about 830 pages of

7     documents, about 100 images, about 23 videos.  So pretty

8     substantial.  And then on Tuesday the government provided us

9     with about 800 pages of more documents, and pretty important

10    documents, the medical records, and also some internal

11    affairs issues with some of the police officers.  So that's

12    what the government has provided for us.

13         We haven't really had a discussion about pleas.  I

14    think we are still pretty far away on seeing how this case

15    resolves.  And, obviously, the Court is aware that we'd like

16    to at least set a trial date in a reasonable time, given the

17    totality of the circumstances, obviously.

18         The issue being that when the government filed

19    its, I guess, notice of discovery on Monday, it indicated

20    that it was going to provide electronic evidence by way of

21    Evidence.com and then documentary evidence by way of

22    Relativity.

23         As the Court is well aware, unfortunately, the

24    government has missed some of its own, kind of, self-set

25    dates.  Even in the motion there was mentioned -- or rather

1   notice -- there was mention by the government that we'd have

2   access to Evidence.com by September the 17th, and that

3   certinaly has not happened.

4           The only other issue that I will bring to the

5   Court's attention, which the government and Ms. Halim -- I'm

6   sorry -- Ms. Mirell can certainly address this too.  We

7   provided the government with an 11-page discovery letter of

8   the items that we would like to receive going forward, and

9   that was just this month.  But the government still hasn't

10  responded to that quite yet.

11          So at bottom we've received, I think, considerable

12  discovery, particularly given what type of case this is,

13  Your Honor.  It's not kind of a complicated, white-collar

14  case, where there are terabytes of information.  That said,

15  given how many other people are charged in this case, I

16  understand there is a lot of information out there.  And

17  it's always, quite frankly from our perspective, very

18  difficult because we're always trying to distinguish

19  ourselves from the "rioters", because we didn't engage in

20  riots.

21          I will say, with the evidence we have, we could go

22  to trial now.  I will never -- and the government uses this

23  in its brief, and I know we talked about this briefly, I am

24  never going to waive *Brady*.  That said, I do believe we

25  received a lot of information that would qualify under

1    *Brady*, as we always have done.  *Brady* is an ongoing

2    obligation, and the government needs to continue to give us

3    that information.

4         We would like to move forward for many of the

5    reasons we set forth in our pleading that we filed today,

6    Your Honor.

7         THE COURT:  So you want to go to trial on the

8    current stay of discovery?

9         MR. FLOWERS:  Well, I would go to trial, and if

10    the government would continue to try to get discovery to us,

11    I think that would be a workable solution which, as the

12    Court is well aware, even in the most ideal situation, the

13    government from time to time provides discovery even during

14    trial.  So I have been in that situation too.

15         But here, again, the case, as the Court said in

16    one of the very first status conferences -- you know,

17    everything is on video here.  On a certain level, this case

18    is what do those 23 videos say and what is the context that

19    we have on those videos and what's the context the

20    government has on those videos?

21         On a certain level, again, this case is pretty

22    straightforward because of all of the video.  Again, our

23    position certainly is that we are always going to welcome

24    more discovery, but we've got, at this stage, over 1600

25    pages of discovery, 23 videos.  We've got significant

1  discovery, I think, to move forward and be able to try the

2  case.

3       THE COURT:  Anybody from the government want to

4  respond?  Ms. Miller?

5       MS. MILLER:  Good afternoon, Your Honor.  I would

6  just respond to a few points that Mr. Flowers made.

7       First, factually, I just want to clarify because

8  during this hearing Mr. Flowers indicated that the

9  government indicated that defense would have access to

10 Evidence.com by September 17th.

11      I believe in the pleading he filed before the

12 hearing, the severance motion, he indicated that we said

13 body-worn camera footage would be provided by September 17th

14 and suggested that we failed to meet both of those

15 deadlines.

16      I just want to clarify, to the extent there's been

17 a misunderstanding.  That's not what we said, and we did

18 meet the deadlines we established in our reports.  What we

19 said was we expected to be technologically able to share

20 body-worn camera footage by the 17th, which we were.  We had

21 it in our position and we had, in fact, established a

22 defense instance of Evidence.com for the federal public

23 service.  We paid for their licenses.  They have them.  And

24 we were ready to share the footage with them.  They are

25 working very vigorously on a plan where they will serve as

1      the discovery liaison for the hundreds of cases here, and

2      we're in contact with them every day.

3                 So we're still on target, as we said in our --

4      well, what we actually said was we hoped to provide the

5      body-worn camera footage last week, that we were still

6      cleaning it up and organizing it, which is why we were

7      technologically able to.  We still had to tag it, for

8      example, et cetera.  And we have done that and we are on

9      target for sharing that tomorrow.  We said in our memo that

10     we expected to provide it no later than the end of this

11     week.  So we have actually met all of the deadlines that we

12     provided in our status reports.

13                Putting that aside, and just addressing the legal

14     matters, I just want to say, I think that we probably need

15     to address the motion for severance in order to address all

16     of the issues that Mr. Flowers is raising.

17                But, essentially, the fact that he wants a speedy

18     trial now, and potentially is willing to waive his right to

19     additional discovery at this time, is not a basis for this

20     Court, in our view, to sever the cases.  We've laid that out

21     to some degree, without addressing severance, the basis for

22     continuing the cases together exists under the Speedy Trial

23     Act, and our motion to continue the entire trial can be

24     granted over his objection for speedy trial purposes.

25                We are doing everything we can to provide

1    voluminous discovery.  This Court has recognized our

2    diligent efforts, has recognized the reasonableness of them,

3    has granted a continuance on that basis for his co-defendant

4    and a continuance that's reasonable for his co-defendant,

5    based on the ends of justice, is reasonable and applicable

6    for him under (h)(6), as this Court has previously found.

7              There is also, of course, the tolling

8    considerations involved for COVID, as a separate matter, to

9    continue this.  As I understand it -- and I am not in the

10   weeds of these cases.  I am really just dealing with

11   voluminous discovery issues.  But these two defendants, as I

12   understand it, neither of them are detained, which would

13   mean that in terms of the Court's master calendar and

14   setting felony trials for -- you know, setting them down for

15   trial, is probably not going to be the priority on the

16   Court's master calendar, given the COVID considerations at

17   this time.

18             So for all of those reasons, we just don't think

19   that at this time, even if it were appropriate and lawful

20   for Mr. Flowers' client to waive discovery -- and I'm not

21   saying that he can't -- this isn't the time to do that.  It

22   isn't an appropriate ruling to reach right now.

23             The appropriate ruling right now is, especially --

24   and again, I'm sure trial counsel will brief this, but there

25   is a presumption that these cases should be tried together.

1   And, Mr. Flowers, from what I briefly read in his motion,

2   attempts to circumvent that by saying, Well, I demand my

3   speedy trial now.

4           A brief reading of *Zafiro*, by the Supreme Court,

5   indicates that it's the trial rights and the presumption of

6   an unfair trial to him, is what needs to drive a severance

7   decision.  And that's not a speedy trial issue.  That's

8   about whether the trial itself would be unfair to him.  And

9   that will, I'm sure, be addressed in the severance motion.

10          It seems to me that the reasoning here is actually

11  kind of backwards because, actually, the presumption here

12  under the Speedy Trial Act is that he should be tried with

13  his co-defendant; and that if the exemption that applies to

14  his co-defendant is reasonable, it applies to him too.  Not

15  the opposite.

16          THE COURT:  Well, I think that he's filed a motion

17  to sever, and I think it should be briefed, and it should be

18  argued.  I just want to make a couple points, partly for

19  Mr. Johnson's edification and to respond to one of the

20  things you said, Ms. Miller.

21          I think the severance came up in our last status

22  conference, in part because one of the cases that talks

23  about co-defendants in a speedy trial situation or maybe

24  it's actually the statute itself says that if the

25  co-defendant doesn't like being linked to the other

1    defendant, for speedy trial purposes, you can always move to

2    sever, but you still have to separately meet the criteria

3    set forth in the case law for a severance.

4         Secondly, a point that you've made that I think is

5    worth putting on the record and also for Mr. Johnson's

6    benefit, in the age of COVID, we have additional problems.

7    Under the CARES Act and under the Chief Judge's standing

8    orders and procedures, we have only recently begun to have

9    trials in this courthouse in criminal cases.

10        Priorities have been given to those defendants who

11   were detained.  Among the defendants who have been detained,

12   priority has been given to those defendants that were

13   detained in other cases before January 6th ever happened.

14   There are people sitting in the D.C. jail who were charged

15   with guns and drugs and other various things.  And, you

16   know, that's what we are doing.  We are trying no more than

17   three criminal cases a week, and we're picking juries in the

18   ceremonial courtroom to achieve distancing and, in fact, not

19   expose jurors.  It's a complicated logistical matter as to

20   how this all works.

21        The Chief Judge and Judge Contreras, who is head

22   of the calendar committee, and Judge Chutkan, who has been

23   working with him on the master calendar, and their staff,

24   their clerk and everybody, are doing the best they can.

25        Now, at some point -- and this could be the case,

1    I don't know -- someone may make an argument that may be

2    successful saying, Well, that is all well and good, but the

3    defendant still has his or her right to a speedy trial, and

4    you got to figure out a way to do it.  But no one has made

5    that argument to my knowledge yet, and certainly no one has

6    succeeded in that argument.

7              The second point -- maybe it is more than the

8    second -- is the distinction between the Speedy Trial Act

9    and the constitution of the United States.  The Speedy Trial

10   Act sets days -- you are entitled to be indicted within

11   X-number of days, absent tolling, for various reasons.  You

12   are entitled to be tried within Y-number of days, absent

13   tolling for various reasons.  And those time frames that

14   Congress wrote in, are much more stringent than what the

15   Supreme Court has said when they've interpreted the speedy

16   trial provisions of the United States constitution.

17             Without prejudging anything, we are a long ways

18   away from whether any defendant's Sixth Amendment or due

19   process rights are being denied by virtue of the inability

20   to try cases as expeditiously as we would in other areas.

21             Pre-COVID, you know, people can get to trial

22   pretty quickly with cases that we normally have in this

23   courthouse:  Drugs, guns, bank robberies, conspiracies,

24   RICO, political corruption.  You've been involved --

25   Ms. Miller and Mr. Flowers have been involved in big,

1   white-collar cases, that do have lots and lots of documents

2   that take longer for discovery to be completed than those

3   typical cases that I talk about.

4           In pre-COVID times, we were able to deal with

5   those too.  We've had trials in this courthouse that lasted

6   months.  Judge Lamberth had one and I think that Judge Hogan

7   did too, that's lasted a year.  Judge Lamberth has had more

8   than one that's lasted a year.  But that's his problem.

9           We are living in a different era.  Both because of

10  COVID and because -- and I take Mr. Flowers' point, and I

11  said this too, one of the challenges for the government and

12  for defense lawyers in these cases and for the judges and

13  for the juries, eventually, is what did this particular

14  defendant do?

15          I mean, you can look at these videos and get

16  outraged by what you are seeing, but each defendant has to

17  be judged by judge or by jury on his or her own conduct on

18  that day.  Some of the discovery that the defense lawyers

19  and their clients are getting, and the efforts that are

20  being made by the United States and by the defense bar, the

21  good offices of the federal public defender, they are going

22  to be wholly irrelevant to any one particular defendant.

23          But some of it may be hard to access until

24  recently, until both the United States and the federal

25  public defender have gotten systems in place and technology

in place to do it.  Some of it might be quite relevant to an individual.  Some of it may be exculpatory.  It may be *Brady* material.  It may look worse than it actually is when you look at everything for a particular defendant.

So, you know, at some point Mr. Flowers and his client are going to have to decide whether they do want to go to trial, even if they don't have everything that they are entitled to, recognizing the government's ongoing obligation to provide discovery even in a trial, *Brady*, non-*Brady* and all of that.

But the reality is that even if I were to set a trial date, I think that under the current procedures in this courthouse, it would be a backup trial.  It would be behind detained defendants who were detained in non-January 6th cases.  And that would be behind detained defendants who want their rights to trial in detained -- January 6th defendants who are detained.

So I understand all Mr. Flowers' arguments and Mr. Johnson's frustration with this cloud hanging over his head and wanting to go to trial for all of the reasons set forth in Mr. Flowers' papers.  But, realistically, how we get from point A to point B is both a question of the law and severance, the law and speedy trial, the constitutional rights to a speedy trial, the logistics of discovery, and the COVID logistics of this and every other courthouse in

1    the country.

2              So at some point we are going to work our way

3    through all of that, and maybe Mr. Flowers will persuade me

4    to do something over the government's objection.  Certainly

5    Ms. Miller knows, she's been in my courtroom before, that

6    that happens sometimes in my courtroom.  The government

7    loses as often as it wins on motions.  So we will see.

8              I think what would make sense is where we set a

9    briefing schedule on Mr. Flowers' motion, a reasonably

10   expeditious one, then I will hear from pre-trial, and then

11   we will see when we are going to set the next status

12   conference, in view of what's been said by the government

13   and by Mr. Randolph's lawyer about whether they want to move

14   forward.

15             I don't know who is going to be briefing the

16   severance motion, but who from the government wants to tell

17   me what you think is a reasonable time frame to do that?

18             MS. MIRELL:  I will, Your Honor.

19             Assuming that the Court would like to move

20   expeditiously, I propose October 8th as a filing deadline.

21             THE COURT:  If she files a response or an

22   opposition on October the 8th, Mr. Flowers, when would you

23   like to file a reply?

24             MR. FLOWERS:  Your Honor, we will need to take a

25   week; October 15th?

1          THE COURT:  And do you want to have an argument on

2    the severance motion shortly after that day?

3          MR. FLOWERS:  We would like to be heard, Your

4    Honor, if the Court is amenable to it.

5          THE COURT:  So let me ask Ms. Johnson to look at

6    our calendar.  I have some things the end of the week, but

7    either the 18th or 19th would work for me.

8          COURTROOM DEPUTY:  Of October, correct, Judge?

9          THE COURT:  October.

10          COURTROOM DEPUTY:  I'm wide open in the afternoon

11    on the 19th.

12          THE COURT:  Don't we have a 2:00 status?

13          COURTROOM DEPUTY:  Yes, we have a 2:00.  Do you

14    want to do a 3?

15          THE COURT:  So do you want to do it -- and it

16    won't take very long.  Do you want to do this argument at

17    2:30 or 3:00 on the 19th?

18          MR. FLOWERS:  That is certainly fine for the

19    defense, Your Honor.  Obviously, I will defer to the

20    government and the Court about their schedules.

21          MS. MIRELL:  Yes, Your Honor.  October 19th at

22    2:30 p.m. works for the government.

23          THE COURT:  October 19th at 2:30 for oral argument

24    on the severance motion.

25          Okay.  While we're talking about Mr. Johnson,

1    there's somebody from pre-trial on.  Who's here from

2    pre-trial at the moment?

3              PRETRIAL SERVICES:  Good afternoon, Your Honor.

4    Da'Shanta' Valentine-Lewis, pre-trial services agency.

5              COURTROOM DEPUTY:  Da'Shanta' Valentine-Lewis?

6              THE COURT:  Am I supposed to be hearing somebody

7    talking?

8              COURTROOM DEPUTY:  Yes.  Ms. Valentine-Lewis is on

9    the line.

10             THE COURT:  Ms. Valentine-Lewis, I would like to

11   know about specifically Mr. Paul Russell Johnson's

12   compliance with the conditions of pre-trial release.  Last

13   time we had a status conference, there were some requests to

14   modify those conditions.  That was done, I believe, and so

15   there was nothing formally filed about Mr. Johnson's

16   compliance in advance of this hearing.  He's being

17   supervised in the Eastern District of Virginia.  So what can

18   you tell us?

19             PRETRIAL SERVICES:  Yes, he's currently being

20   supervised in the Eastern District of Virginia by U.S.

21   pre-trial services office, Tanya Johnson.  At this time, it

22   appears that Mr. Johnson remains in compliance with the

23   conditions that has been set forth.

24             THE COURT:  Okay.

25             COURTROOM DEPUTY:  I don't think Judge Friedman

1    was able to hear you.

2              THE COURT:  I heard what she said.

3              COURTROOM DEPUTY:  Oh, okay.

4              THE COURT:  Anything else you would like to say

5    about Mr. Johnson's compliance?

6              PRETRIAL SERVICES:  Not at this time, Your Honor.

7              THE COURT:  Anybody from the government or the

8    defense want to say anything about conditions of release and

9    compliance before we let pre-trial go?

10             [No response]

11             All right.  Thank you.

12             All right.  So we have set an argument date for

13   the motion to sever.  How much time do you think, Ms. Halim,

14   before we have another status conference with respect to

15   Mr. Randolph?

16             MS. HALIM:  Thank you, Your Honor.

17             I would propose 60 days, if that's agreeable to

18   the government and the Court.  Just with my schedule, I need

19   that amount of time to go over everything with Mr. Randolph.

20             THE COURT:  Government?

21             MR. JUMAN:  Your Honor, that's certainly fine with

22   the government.

23             THE COURT:  All right.  Today is the 23rd of

24   September.  That gets us to very close to Thanksgiving.  So

25   we could either do the 18th or 19th of November or we could

1    wait until the week after Thanksgiving?

2              MR. JUMAN:  Any of those dates are fine for the

3    government.

4              MS. HALIM:  One moment, Your Honor.  I am checking

5    my calendar.  The week of Thanksgiving is pretty jam-packed

6    for me.  If we could do that following week, that would be

7    preferable.

8              THE COURT:  Okay.  30th of November?  The 1st of

9    December?

10             MS. HALIM:  Both good dates, November 30th or

11   December 1st.

12             THE COURT:  Ms. Johnson, what do you prefer?

13             COURTROOM DEPUTY:  I'm available on December 1st,

14   Judge.

15             THE COURT:  So December 1st we have a 2:00.  It

16   shouldn't take very long.  Do you want to do 1:00 or 3:00?

17             COURTROOM DEPUTY:  Either/or.  You also have a

18   1:00 and a 2:00 on December --

19             THE COURT:  What?

20             COURTROOM DEPUTY:  We have a 1:00 and a 2:00 on

21   December 1st.

22             THE COURT:  I just have 2:00.  Am I wrong?

23             COURTROOM DEPUTY:  Oh, okay.  I am looking at your

24   calendar.  There is also something also scheduled for 1:00.

25             THE COURT:  Maybe I am not up to date yet.

1          COURTROOM DEPUTY:  Okay.

2          THE COURT:  All right.  So I'm offering you -- and

3    I think we should have both defendants at the status

4    conference, even though I will see Mr. Flowers and his

5    client earlier.  So let me ask Mr. Flowers as well, does the

6    1st of December work for you?  And I guess we are talking

7    about either noon or 3:00.

8          MR. FLOWERS:  Those times work, Your Honor.

9          THE COURT:  Okay.  What's the preference?  Noon or

10   3:00, Ms. Halim?

11         MS. HALIM:  Literally both work.  I would pick

12   earlier but I am available both.

13         THE COURT:  All right.  At noon on December the

14   1st, we will have a status conference for both defendants in

15   this case.  Let me ask Mr. Randolph, in view of the

16   discussion -- first of all, Mr. Randolph, do you understand

17   you have the right to a speedy trial?

18         DEFENDANT RANDOLPH:  Yes, sir.

19         THE COURT:  In view of the discussion here about

20   your lawyer's need for discovery and further discussion

21   about a possible plea or decisions about how to proceed in

22   the case, with both the government and with you, do you

23   agree to waive your right to a speedy trial between now and

24   December the 1st?

25         DEFENDANT RANDOLPH:  Yes, Your Honor.

1          THE COURT:  Okay.  Thank you.

2          Well, I find it is in the interest of justice to

3   toll the running of speedy trial with respect to

4   Mr. Randolph between now and December the 1st.

5          The pendency of the motion to sever under the

6   Speedy Trial Act tolls the running of the Speedy Trial Act

7   until that motion is resolved, assuming I resolved it

8   promptly.  I can't wait to hear it to resolve it under the

9   case law.  So we've got an argument scheduled for October

10  the 19th.

11         If I don't resolve the motion at the time of the

12  argument, I will resolve it shortly thereafter.  And so I

13  may or may not have to deal -- I will have to deal with

14  Mr. Johnson's speedy trial rights at some point, but for

15  now, I don't think I need to make an interest of justice

16  finding.  I think I can just rely on the pendency of the

17  motion, and the fact that we've agreed on an expedited

18  briefing schedule and desire and hope that we can get it

19  resolved reasonably quickly.

20         Does that make sense to you, Mr. Flowers?

21         MR. FLOWERS:  It does, Your Honor.

22         THE COURT:  Thank you.

23         All right.  Anything else that anybody wants to

24  say today?

25         MS. HALIM:  Your Honor, I do have an inquiry about

1    the motion to sever oral argument on the 19th of October.

2    Will that be conducted remotely by Zoom or in person?

3              THE COURT:  Let's do it remotely by Zoom.

4              MS. HALIM:  I would like to participate, even

5    though, obviously, Mr. Randolph doesn't really have a stake

6    in the motion.  I did briefly skim Mr. Flowers' motion and

7    his name is referenced fulsomely throughout, and I would

8    like to be present.  So if Ms. Johnson could forward me the

9    link to that, I would be very appreciative.

10             COURTROOM DEPUTY:  I will.

11             THE COURT:  Okay.  So you are involved too.

12             COURTROOM DEPUTY:  Thank you.

13             THE COURT:  You can advise us now or later.  This

14   is a legal argument.  There's not going to be any testimony.

15   But Mr. Flowers and Ms. Halim can tell us now or later

16   whether Mr. Johnson and/or Mr. Randolph want to be present

17   for the legal argument or not.

18             I can certainly waive it if they want to, but it's

19   up to you if you want to answer the question now, fine.  If

20   you want to e-mail Ms. Johnson after you've talked to your

21   clients, that's fine too.

22             MS. HALIM:  Your Honor, as for Mr. Randolph, I

23   will speak with him.  I imagine it's going to depend on his

24   work schedule quite a bit.  So I will email Ms. Johnson and

25   the parties once I know the answer to that.

1          THE COURT:  Thank you, Ms. Halim.

2          MS. HALIM:  Thank you.

3          MR. FLOWERS:  Your Honor, I will speak on behalf

4    of Mr. Johnson.  I am pretty confident Mr. Johnson will want

5    to be there.  Obviously, we haven't spoken about his work

6    schedule too.

7          THE COURT:  You can speak to him, but I see him on

8    the screen.  He is nodding his head and has a thumbs up.  So

9    I think Mr. Johnson wants to be there.  So we will include

10   Mr. Johnson as well in this argument on severance.  And

11   Ms. Halim will let us know whether Mr. Randolph wants to be

12   there or not.

13         Okay.  Is there anything else that we need to talk

14   about?  Anything I've forgotten?

15         MS. MILLER:  Your Honor, I will just say for the

16   record, and the Court doesn't have to react unless it wants

17   to, I think to the extent that the Court has found the ends

18   of justice apply to toll the case for Mr. Randolph, that

19   (h)(6) mandatorily then would apply as an additional basis

20   to Mr. Johnson.

21         THE COURT:  Well, asserting what I said last time,

22   orally, at the hearing and in a subsequent short opinion,

23   and Mr. Flowers, in his memo filed today, it's a motion to

24   sever, and he also calls it a preliminary response to the

25   government's paper regarding speedy trial.

1          So, you know, I guess if he wants to file anything

2   more, since this is called preliminary, or if the government

3   wants to file a response to his preliminary response.  I

4   don't know if there are any cases other than the ones that I

5   cited in my opinion and you cited in your filing of earlier

6   today that elucidate this question.  But anybody is welcome

7   to bring any additional cases to my attention, either to

8   undergird my ruling of last time or to persuade me that I

9   was wrong.

10          MS. MILLER:  I think you were right, Your Honor.

11          THE COURT:  I know you do.

12          MR. FLOWERS:  Your Honor, I would think you are

13   right.

14          THE COURT:  Ms. Miller thinks I was right and

15   Mr. Flowers thinks I am wrong.

16          MR. FLOWERS:  No, no.  I think you were right,

17   Your Honor, but I think the lay of the land has changed,

18   because we have filed a motion to sever.  So before there

19   was a filing of the motion to sever, I think the Court was

20   exactly right.  But I do think because the motion to sever

21   has been filed, that 3161(h)(6) no longer applies or at

22   least there is a question about whether it applies.

23          MS. MILLER:  The motion hasn't been granted, which

24   is what (h)(6) provides, where no motion for severance has

25   been granted, not filed.

1          THE COURT:  So this is the problem when you get

2     two good lawyers arguing the law.  Both of them have lots of

3     time on their hands.

4          MS. MILLER:  Actually, I am late to a hearing with

5     Judge Sullivan.

6          THE COURT:  Oh, you don't have to worry about him.

7     Anyway, thank you all for weighing in today and for moving

8     this case along further as best we can.  I will get the

9     severance thing resolved, and we will see where we are once

10    it's fully briefed, and I will see you for that argument on

11    the 19th, and everybody back here December 1st.

12         MS. MILLER:  Thank you, Your Honor.

13         MR. FLOWERS:  Thank you.

14         MR. JUMAN:  Thank you, Your Honor.

15         (Proceedings concluded at 4:13 p.m.)

16

17

18

19

20

21

22

23

24

25

1            **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court**

4  **Reporter,** certify that the foregoing is a true and correct

5  transcript of the record of proceedings in the

6  above-entitled matter.

7

8              **Please Note:**  This hearing occurred during

9  the COVID-19 pandemic and is therefore subject to the

10  technological limitations of court reporting remotely.

11

12

13

14  __October 6, 2021__          __/s/_____
                **DATE**                    **Lorraine T. Herman**

15

16

17

18

19

20

21

22

23

24

25