UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Case No. 21-cr-332-JMC |
| PAUL RUSSELL JOHNSON, *et al.,* : | |
| Defendants. : | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
PAUL RUSSELL JOHNSON'S MOTION TO SUPPRESS ELECTRONIC
EVIDENCE OR, IN THE ALTERNATIVE, TO APPOINT A SPECIAL MASTER**

**INTRODUCTION**



*Photo 1*: Paul Johnson cooperating with law enforcement, while they raid his family and farm with military assault rifles and an armored vehicle.



*Photo 2*: Law enforcement pointing a laser-equipped, military assault rifle at Mr. Johnson's wife, who was in the home with two eight-year-old children and one 13-year-old child, while Mr. Johnson cooperated.



On April 13, 2021, during a pre-dawn raid of Paul Russell Johnson's property and family, which includes three children, law enforcement officers violated the Fourth Amendment. Over twenty officers, including the Special Weapons Attack Team of the Federal Bureau of Investigation ("FBI")—armed with military-style assault weapons and an armored vehicle—illegally searched for and seized evidence. As explained in Mr. Johnson's earlier Motion to Suppress briefing, the unreasonable, pre-dawn raid is paradigmatic of the unconstitutional search and seizure of evidence on Mr. Johnson's property. This excessive show of force used against the peaceful Johnson Family is a metaphor for the unconstitutional overbreadth of the Search Warrant and its execution. Law enforcement officers so overstepped the limits of the Fourth Amendment that they searched the wrong address.

As a remedy, Mr. Johnson seeks to suppress electronic evidence seized in connection with the Search Warrant. That Warrant did not authorize the seizure of certain electronic devices and it allowed for an unconstitutionally overbroad and unreasonable search of cell phones. Also, this Court should suppress all evidence taken by law enforcement officers when they searched the wrong address.

After an initial round of briefing, the Court acknowledged the "important" Fourth Amendment issues raised by Mr. Johnson. The Court decided that those issues "merit fuller briefing and careful consideration by the Court." Mem. Op. & Order at 3 (Dec. 12, 2021), ECF No. 72; The Court ordered supplemental briefing on these critical constitutional issues. Accordingly, Mr. Johnson submits this Supplemental Brief In Support of his Motion to Suppress Electronic Evidence or, in the Alternative, to Appoint a Special Master ("Supplemental Motion to Suppress") to address the following Fourth Amendment issues: (1) whether the government executed its search warrant at the wrong address; (2) whether the government seized four walkie-

talkies by opening a locked safe without a warrant to do so; and (3) whether Mr. Johnson has a privacy interest in Person-1's cell phone. This Supplemental Motion to Suppress adopts and incorporates Mr. Johnson's initial Motion to Suppress briefing. Finally, for this Court to adequately resolve the important factual and legal issues, Mr. Johnson repeats his position that witness testimony is needed for the upcoming suppression hearing.

## PROCEDURAL HISTORY

On November 15, 2021, the Court entered an Order setting a briefing schedule for the presently pending Motion to Suppress and setting a hearing date of December 14, 2021. (ECF No. 53). On November 19, 2021, Mr. Johnson filed under seal his Motion to Suppress Electronic Evidence or, in the Alternative, to Appoint a Special Master. (ECF No. 57-1 (sealed); ECF No. 66 (unsealed)).[1] On December 3, 2021, the government filed its Opposition. (ECF No. 63). On December 10, 2021, Mr. Johnson filed his Reply in support of his Motion to Suppress. (ECF No. 71).

Meanwhile, on December 7, 2021, Mr. Johnson served subpoenas on twelve FBI special agents seeking testimony from them at the suppression hearing. On December 9, 2021, the government filed a Motion to Convert the December 14, 2021 Hearing for Defendant Paul Russell Johnson's Motion to Suppress to a Status Conference ("Motion to Convert Hearing"), arguing that Mr. Johnson should not be permitted to present testimony at the hearing from the FBI agents who executed the Search Warrant. (ECF No. 64). Mr. Johnson opposed the government's Motion. (ECF

---

[1] On December 9, 2021, Mr. Johnson filed a Notice Letter to the Court Regarding Filing of Previously Sealed Documents, which notified the Court that Mr. Johnson would be re-filing his Motion to Suppress with unsealed versions of its Exhibits. (ECF No. 65). The same day, Mr. Johnson filed an unsealed version of the Motion to Suppress with the Court. (ECF No. 66).

No. 69).[2] On December 10, 2021, the government filed its Reply in support of its Motion to Convert. (ECF No. 70).

On December 10, 2021, the Court issued an Order vacating the scheduled motions hearing on December 14, 2021 "[i]n view of the government's motion to convert the December 14, 2021 motions hearing to a status conference and the myriad issues raised in the parties' briefing thereto." Min. Order (Dec. 10, 2021). On December 14, 2021, the Court issued a Memorandum Opinion and Order providing the Court's reasoning for vacating the December 14, 2021 motions hearing. Mem. Op. & Order at 1 (Dec. 14, 2021), ECF No. 72. In its Memorandum Opinion and Order, the Court ordered the Parties to meet and confer regarding a briefing schedule for the issues Mr. Johnson raised in his Reply in support of his Motion to Suppress; namely: (1) whether the government executed its search warrant at the wrong address; (2) whether the government seized four walkie-talkies by opening a locked safe without a warrant to do so; and (3) whether Mr. Johnson has a privacy interest in Person-1's phone. *Id.* at 2–3. The Court further ordered the parties to file a joint status report with an agreed upon briefing schedule and the names and number of witnesses required for the suppression hearing. *Id.* at 3.

On December 23, 2021, pursuant to the Court's December 14, 2021 Memorandum Opinion and Order, the Parties filed a Joint Status Report. That same day, the Court issued an Order adopting the Parties' briefing schedule, including briefing on the issue of witness testimony at the hearing, and scheduling the suppression hearing for March 4, 2022 at 10:00 a.m. via Zoom. Order at 1–2 (Dec. 23, 2021), ECF No. 74. The Court further ordered that it would decide whether witness testimony is necessary to resolve the issues raised in the Parties' briefing after reviewing the

---

[2] On December 9, 2021, the Court issued an Order requiring Mr. Johnson to file a response to the government's Motion by December 10, 2021 at 3:00 p.m. Min. Order (Dec. 9, 2021).

parties' briefs and prior to the hearing. *Id.* at 2. On January 13, 2022, the Court issued an Order rescheduling the suppression hearing for March 17, 2022.[3] Min. Order (Jan. 13, 2022).

## FACTUAL BACKGROUND

### The April 12, 2021 Search Warrant Has the Wrong Address

On April 12, 2021, the government sought a warrant in the United States District Court for the Eastern District of Virginia for the seizure and search of, among other things, mobile devices in the possession of Mr. Johnson, in the possession of Person-1, and at his residence in Lanexa, Virginia. *See* Mot. to Suppress Elec. Evid. or, in the Alt., to Appt. a Spec. Master ["Mot. to Suppress"] Ex. 1, ECF No. 66-1. To the Search Warrant application, the government attached an Affidavit from FBI Special Agent Maldonado[4] attesting to why she had probable cause to search Mr. Johnson, Person-1, Address-1,[5] and Mr. Johnson's and Person-1's mobile devices. Mot. to Suppress Ex. 2, Maldonado Aff. ¶ 3, ECF No. 66-2. However, the Search Warrant application and the attached Affidavit listed Address-1 as Mr. Johnson's residence, instead of Address-2, which is the correct address for Mr. Johnson's residence. Reply In Supp. Mot. to Suppress ["Reply"] Ex. 1, GIS map of properties, ECF No. 71-1. In addition, the Affidavit erroneously describes the "Subject Residence" as the "property located at Address-1, which is further described as three structures on 13.67 acres which include a white siding, two-story farmhouse, a detached four-car garage, and a white single-story, double wide trailer." Mot. to Suppress Ex. 2, Maldonado Aff. Attach. A ¶ 3, ECF No. 66-2. The Affidavit does not contain any specific factual averments related to these

---

[3] On January 6, 2022, this case was reassigned to the Honorable Jia M. Cobb. (ECF No. 75).

[4] At the government's request, Mr. Johnson is not using Special Agent Maldonado's first name.

[5] Due to the highly publicized nature of the January 6th cases, these addresses are redacted for the privacy, safety, and security of Mr. Johnson and his family.

5

structures and the probable cause to believe that the items the government sought to search for and seize would be contained inside of them. *See* Mot. to Suppress Ex. 2, Maldonado Aff. ¶¶ 65–73, ECF No. 66-2. On April 13, 2021, the FBI and other local law enforcement executed the Search Warrant on both Address-1 and Address-2, as well as the detached, four-car garage.

**The Government's Illegal Seizure of Mr. Johnson's Walkie-Talkies from a Locked Safe**

When executing the Search Warrant on April 13, 2021, the FBI special agents unlawfully seized four walkie-talkies from inside of a locked safe. *See* Reply Ex. 2, Affidavit of Paul Russell Johnson ["Johnson Aff."] ¶¶ 10–14, ECF No. 71-2. The safe is 55 inches tall, 29 inches wide, and 20 inches deep, and is located in the bedroom of Mr. Johnson's home. *Id.* at ¶ 11. Mr. Johnson always keeps the safe locked unless he needs to remove something from it because, otherwise, the door to the safe swings open, blocking the path to his closet. *Id.* at ¶ 14. On April 13, 2021, the four walkie-talkies were inside of the safe. *Id.* at ¶ 13. Nothing in the Search Warrant provides probable cause for law enforcement to search Mr. Johnson's safe.

**Mr. Johnson's Privacy Interest in Person-1's Cell Phone**

When executing the Search Warrant on April 13, 2021, the FBI agents seized Person-1's cell phone. Person-1 is Mr. Johnson's now wife. *Id* at ¶ 3. Mr. Johnson pays for two cell phones—one that he typically carries with him with phone number X ("Phone X") and one that Person-1 typically carries with her with phone number Y ("Phone Y"). *Id* at ¶ 3; *see also* Reply Ex. 2, Johnson Aff. Ex. 1, ECF No. 71-2. Mr. Johnson owns and operates his own tree trimming business, for which Person-1 functions as an executive assistant and uses Phone Y to access Mr. Johnson's private information on Phone X. *See* Reply Ex. 2, Johnson Aff. ¶ 4, ECF No. 71-2. This private information includes, among other things, Mr. Johnson's Social Security Number, privileged communications with his attorneys, and usernames and passwords for his personal and business

bank accounts. *See id.* at ¶ 6. Mr. Johnson's personal and business e-mails are permanently logged in on Phone Y so that Person-1 can use Phone Y to sometimes write and respond to emails on Mr. Johnson's behalf. *Id* at ¶ 8. Mr. Johnson and Person-1 also use a software called If This Then That ("IFTTT"), which allows Person-1 to see any message or email that goes to Phone X on Phone Y and allows them to be accessed on Phone Y. *Id* at ¶ 7. Additionally, photos taken on Phone X back up to a cloud account and can be accessed on Phone Y. Finally, when Phone X is broken, Mr. Johnson carries with him and uses Phone Y. *Id* at ¶¶ 9–10.

## ARGUMENT

I. **The Search Warrant and the government's search raise myriad Fourth Amendment issues and violations of Mr. Johnson's Fourth Amendment rights.**

As Mr. Johnson addressed in his Motion to Suppress and Reply, the government violated his Fourth Amendment rights in several ways in executing its Search Warrant. Mr. Johnson now supplements his Motion to Suppress briefing to address the fact that: (1) the government again violated the Fourth Amendment in executing its Search Warrant at the wrong address; (2) the government again violated the Fourth Amendment when it seized four walkie-talkies from a locked safe; and (3) Mr. Johnson has a privacy interest in Person-1's cell phone, therefore Mr. Johnson has standing to challenge the government's search of the phone.[6]

---

[6] The government contends that Mr. Johnson inappropriately raised these three arguments for the first time in his Reply. Reply In Supp. of Govt's Mot. to Convert the Dec. 14, 2021 Hearing at 2, ECF No. 70. Counsel for Mr. Johnson appreciates the Court agreeing to resolve the three important constitutional issues that are the subject of this brief. Nonetheless, to the extent that the government continues to insist otherwise, Mr. Johnson maintains that none of these arguments are "new." To start, Mr. Johnson's Motion to Suppress encompasses the contours of the three arguments at issue. For example, Mr. Johnson asserted that the government unconstitutionally seized his walkie-talkies, even if he did not describe the precise nature of the government's unconstitutional conduct. *See* Mot. to Suppress at 8. Mr. Johnson also asserted ownership over both cell phones. *See id.* at 11 (referring to "his devices" and "the cell phones seized from Mr. Johnson"). To the extent that Mr. Johnson's Reply raised more specific deficiencies in the

7

**A.    The FBI agents executed the Search Warrant on the wrong address, in violation of the Fourth Amendment.**

The government did not have probable cause to seize items from Address-2—the address from which they were seized. It is presumptively unreasonable under the Fourth Amendment to search a house for which no search warrant was issued. *Corrigan v. D.C.*, 841 F.3d 1022, 1029 (D.C. Cir. 2016) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Indeed, "[b]ecause the home 'is accorded the full range of Fourth Amendment protections' against unlawful searches and seizures, . . . an unconsented police entry into a residential unit (whether a house, apartment, or hotel room) constitutes a search for which a warrant must be obtained. *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001) (internal citation omitted) (first quoting *Lewis v. United States*, 385 U.S. 206, 2011 (1966); and then citing *Katz v. United States*, 389 U.S. 347 (1967)). "[W]hen law enforcement wishes to search two houses or two apartments, it must establish probable cause as to each." *Id.* (first citing *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955); and then citing *Steele v. United States*, 267 U.S. 498, 503 (1925)).

In this case, the Search Warrant authorized the search of Address-1. As Exhibit 1 to Mr. Johnson's Reply illustrates, Address-1 and Address-2 are separate buildings with separate

---

government's search, it is responsive to the government's arguments to the contrary in its Opposition.

Finally, the government also ignores that in the Fourth Amendment context, competent defense counsel should file a general motion to suppress and is not precluded from refining those arguments in the reply or at a suppression hearing. *See* 6 Wayne R. LaFave, *Search And Seizure: A Treatise On The Fourth Amendment* § 11.2(a) (6th ed. 2021) ("The motion [to suppress] . . . must of course identify the items which the defendant seeks to suppress. From the defense perspective, it might be desirable to limit the motion to such identification and *a generalized claim* that those items are the fruit of a Fourth Amendment violation." (emphasis added)); Anthony G. Amsterdam & Randy Hertz, *Trial Manual 6 for the Defense of Criminal Cases* § 17.10 (6th ed. 2016) ("In drafting written motions that will have to come on for an evidentiary hearing—which will usually include all motions to suppress evidence—counsel should be careful to avoid unnecessary disclosure of *either the facts or law* that s/he intends to rely upon at the hearing." (emphasis added)).

addresses. Reply Ex. 1, GIS map of properties, ECF No. 71-1. The FBI agents searched for and seized items from both Address-2—an address not listed on the Search Warrant—and Address-1—the address listed on the Search Warrant. *Compare* Mot. to Suppress Ex. 1, ECF No. 66-1, *with* Reply Ex. 1, GIS map of properties, ECF No. 71-1. In addition, the Affidavit erroneously describes the "Subject Residence" as the "property located at [Address-1], which is further described as three structures on 13.76 acres which include a white siding, two-story farmhouse, a detached four-car garage, and a white single-story, double wide trailer." Mot. to Suppress Ex. 2, Maldonado Aff. Attach. A ¶ 3, ECF No. 66-2. Address-2 is the address for the double wide trailer—a different address than the one for which the Search Warrant was issued. Reply Ex. 1, GIS map of properties, ECF No. 71-1.

Further, even if the Search Warrant and Affidavit were issued for the correct address, the Affidavit is devoid of averments pertaining to each of the structures listed in its definition of "Subject Residence." For example, the Affidavit states that FBI agents conducted surveillance on Address-1 and observed Mr. Johnson "leaving the SUBJECT RESIDENCE," but it does not state which of the three structures from which they observed Mr. Johnson leave. *See* Mot. to Suppress Ex. 2, Maldonado Aff. ¶ 70, ECF No. 66-2. Nor does it contain averments that the items that the government sought to search for and seize—clothing Mr. Johnson was wearing on January 6th, travel receipts, and physical or electronic photos and videos of the events of January 6th—were likely to be found in each of the buildings that the government includes in its overbroad definition of the Subject Premises. *See id.* at ¶¶ 70–73, ECF No. 66-2.

      **B.**    **The FBI agents seized four walkie-talkies that were inside of a locked safe, in violation of the Fourth Amendment.**

Assuming *arguendo* that the Search Warrant authorized the FBI special agents to search Address-2, they still exceeded the bounds of the Search Warrant when they seized four walkie-

talkies that were inside a locked safe. The Fourth Amendment requires that a search warrant describe with particularity the places to be searched and the items to be seized to prevent a "general, exploratory rummaging [of] a person's belongings." *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990) (alteration in original) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1981)). "By limiting searches 'to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)); *see also United States v. Smith*, No. 08-CR-189-J, 2008 WL 11394263, at *3 (D. Wyo. Oct. 20, 2008) (citing *U.S. v. Snow*, 919 F.2d 1458, 1461 (10th Cir. 1990), *aff'd*, 363 F. App'x 629 (10th Cir. 2010)("The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.") "When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant." *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988). Thus, "even evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit 'flagrant disregard' for its terms." *Id.*

In this case, the walkie-talkies were inside a locked safe (Reply Ex. 2, Johnson Aff. ¶¶ 13, ECF No. 71-2), and nothing in the Search Warrant or Affidavit authorized the FBI agents to open the safe—or gave them probable cause to believe that the items they were searching for would be found inside. The Affidavit sought to search for and seize clothing that Mr. Johnson was wearing on January 6, 2021, receipts reflecting any travel around that date, and photos and videos—

10

physical or digital. *See* Mot. to Suppress Ex. 2, Maldonado Aff. ¶¶ 71–73, ECF No. 66-2. Notably, the Affidavit does not mention firearms, cash, or other items that are typically stored in a safe (including items of value or important documents). *See generally* Mot. to Suppress Ex. 2, Maldonado Aff., ECF No. 66-2. Thus, in searching a locked safe—a place in which it is unreasonable to believe that any of the items that were the subject of the Search Warrant were likely to be found—the FBI agents exceeded the bounds of the warrant, in violation of the Fourth Amendment.

Further, as discussed in Mr. Johnson's Reply, the good faith exception to the warrant requirement announced in *United States v. Leon*, 468 U.S. 897 (1984), does not apply to the seized walkie-talkies. "Courts have allowed more latitude in connection with searches for contraband items like 'weapons [or] narcotics.' But the understanding is different when police seize 'innocuous' objects," like the walkie-talkies at issue here. *United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017) (quoting *Stanford v. Texas*, 379 U.S. 476, 486 (1965)). A search that encompasses innocuous objects calls for "special 'care'" such that it "minimizes unwarranted intrusions upon privacy.'" *Id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976)). Also, the warrant "must be tailored to the justifications for entering the home." *Id.* Here, the Search Warrant was not so narrowly tailored, particularly with regard to the walkie-talkies. This places the Search Warrant squarely under the third situation to which the *Leon* good faith exception does not apply—it "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" *Leon*, 486 U.S. 897 at 923. In analyzing this type of situation, courts consider "whether an objectively reasonable officer could think the affidavit established probable cause." *Griffith*, 867 F.3d at 1278.

In this case, it was objectively unreasonable to think that the Affidavit established probable cause to seize the walkie-talkies. The Affidavit is silent on walkie-talkies and their use by Mr. Johnson on January 6th, and instead poses a hypothetical scenario under which they "could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol." Mot. to Suppress Ex. 2, Maldonado Aff., Attach. B ¶ 1(k), ECF No. 66-2. But the Affidavit lacks any allegations that Mr. Johnson used a walkie-talkie on January 6th, and he never entered the U.S. Capitol. Put simply, there is no probable cause to believe that Mr. Johnson used walkie-talkies in connection with the charges against him. *See Griffith*, 867 F.3d at 1278 (rejecting the government's good faith exception argument and granting the defendant's motion to suppress where the affidavit "provided no explanation at all of whether [the defendant] might own a phone or whether any such phone might be in his home").

Finally, as discussed below, Mr. Johnson seeks testimony from the FBI special agents who executed the Search Warrant to establish their "flagrant disregard" for its terms. *See Medlin*, 842 F.2d at 1199.

### C. Mr. Johnson has standing to contest the seizure and search of Person-1's cell phone.

Mr. Johnson has a subjective and legitimate expectation of privacy in the contents of Phone Y—the cell phone the government seized from Person–1. Two factors point to this expectation: (1) Mr. Johnson's possessory interest in the phone, and (2) the quality of the private information contained in the phone.

Mr. Johnson bought the phone the government took from Person–1 and pays the monthly bills for it, including the month of April 2021 when the FBI seized Phone Y. When Mr. Johnson

is unable to use his primary cell phone, he uses the seized cell phone to manage his personal and business affairs.[7] Reply Ex. 2, Johnson Aff. ¶ 10, ECF No. 71-2.

In addition to Mr. Johnson's possessory interest in the cell phone, the quality of the information contained on the seized cell phone supports his assertion that he has "a privacy interest in the cell phone[] in some other manner." *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014); *see also United States v. Sigouin*, 494 F. Supp. 3d 1252, 1264 (S.D. Fla. 2019) (noting that "[t]he extent of any residual fourth amendment protection depends, in part, on the *nature* of the particular item being shared") (emphasis added). The phone taken from Person-1 is essentially a mirror of Mr. Johnson's primary phone. Reply Ex. 2, Johnson Aff. ¶¶ 7, 8, ECF No. 71-2. It is permanently logged in to his personal and business email accounts. *Id.* at ¶ 8). It has saved on it the usernames and passwords for Mr. Johnson's personal savings account, his business checking account, and his two business loan accounts. *Id.* at ¶ 6. The only way Mr. Johnson can access his business loan accounts is through the saved usernames and passwords on this particularly seized phone. *Id.* at ¶ 6(e). The same is true of Mr. Johnson's child support account—he cannot log in without Phone Y. *Id.* at ¶ 6(f). In addition, specific software installed on Phone Y, IFTTT, allows Person-1 to see any message, email, or voice mail that goes to Phone X (*i.e.*, another phone linked to Mr. Johnson). *Id.* at ¶ 7. Phone Y also contains privileged communications with Mr. Johnson's attorneys and information that is protected under the work-product doctrine. *Id.* at ¶ 6(b).

---

[7] The government cites the unreported case *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014), to argue that Mr. Johnson has no ownership or possessory interest in the cell phone. Govt's Opp'n at 15. But unlike in that case, here Mr. Johnson has submitted an Affidavit attesting to the above facts and affirming their truthfulness. *See* Reply Ex. 2, Johnson Aff., ECF No. 71-2. He has "offer[ed] testimony to establish that he had an ownership or cognizable property interest in the cellphone at issue." *United States v. Hamlett*, No. 3:18-cr-24 (VAB), 2018 WL 4656241, at *5 (D. Conn. Sept. 27, 2018).

Essentially, Phone Y contains the information Mr. Johnson needs to lead his life. In some cases, it is the only place where that essential information can be found.

"The fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). The Court in *Carpenter* held that the defendant maintained a legitimate expectation of privacy in the record of his physical movements as captured through cell-site location information ("CSLI"). *See id.* at 2219. While CSLI merely reveals one's location, the information on Phone Y reveals the most intimate aspects of Mr. Johnson's life including his medical affairs, his legal affairs, his e-mail messages, and his text messages. He only "shared" it with a third party to the extent that the information resided on another cell phone in which he also had a possessory interest. Significantly, all of this information belongs to Mr. Johnson, not Person-1. *See United States v. Johnson*, No. 17-10129-LTS, 2019 WL 917175, at \*6 (D. Mass. Feb. 25, 2019) (noting that *Carpenter* recognized "one's expectation of privacy in the contents of one's *own* email account" (emphasis in original)). Just as the Supreme Court held in *Carpenter* that a person has a has a right to privacy in the records maintained by a cellular service provider, Mr. Johnson has a right to privacy in the information contained on the cell phone the government seized from Person-1.

## II.     Mr. Johnson agrees with the Court that witness testimony is needed to resolve the factual and legal issues presented in the Motion to Suppress.

Mr. Johnson appreciates the Court's recognition that there are disputed facts that cannot be resolved on the briefs alone, and therefore witness testimony is necessary for the suppression hearing. *See* Mem. Op. & Order at 3 (Dec. 12, 2021), (noting that Mr. Johnson has "raise[d] factual disputes that will require testimony in order for the Court to resolve Mr. Johnson's motion to suppress."). Mr. Johnson agrees that the Motion to Suppress cannot be resolved on the papers alone because "the question of whether to suppress evidence hinges on the resolution" of the three

aforementioned disputed material facts. *United States v. Harris*, No. 19-358 (RC), 2021 WL 1167263, at *4 (D.D.C. Mar. 26, 2021) (citing *United States v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008)). To this end, Mr. Johnson has complied with the government's *Touhy*[8] regulations, even though no court in this District has applied *Touhy* to federal criminal cases in which the federal government is a party. *See Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998). Mr. Johnson also compromised on the number of FBI agents from whom he would seek testimony. Thus, Mr. Johnson asks the Court to require that the government call at least three of the FBI agents who executed the Search Warrant to determine the precise contours of their violation of the Fourth Amendment.

## **CONCLUSION**

WHEREFORE, for the reasons stated above as well as in his Motion to Suppress and Reply, Mr. Johnson respectfully requests that the Court suppress all electronic evidence seized pursuant to the April 12, 2021 Search Warrant because it did not authorize the seizure of the desktop computer, HD cameras, and walkie-talkies, and it proposes an unconstitutionally overbroad and unreasonable search of the seized cell phones. Also, this Court should suppress all evidence taken from the wrong address—Address 2. Alternatively, Mr. Johnson requests that the Court appoint a neutral special master to review and segregate documents and communications that are protected by attorney-client privilege or the work product doctrine. Mr. Johnson also respectfully requests that he be permitted to present witness testimony from the three FBI agents who executed the Search Warrant to assist the Court as it resolves the disputed facts and analyzes the law.

---

[8] *Touhy v. Ragen*, 340 U.S. 462 (1951).

Dated: January 21, 2022                    Respectfully submitted,

                                           _____/s/_____
                                           Kobie Flowers (Bar No. 991403)
                                           BROWN GOLDSTEIN & LEVY, LLP
                                           1717 K Street, NW, Suite 900
                                           Washington, DC 20006
                                           Tel: (202) 742-5969
                                           Fax: (202) 742-5948
                                           kflowers@browngold.com

                                           Monica Basche (Bar No. MD0105)
                                           BROWN GOLDSTEIN & LEVY, LLP
                                           120 E. Baltimore Street, Suite 2500
                                           Baltimore, Maryland 21202
                                           Tel: (410) 962-1030
                                           Fax: (410) 385-0869
                                           mbasche@browngold.com

                                           *Counsel for Paul Russell Johnson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading was served on all counsel of record via the Court's electronic filing service.

/s/ *Kobie Flowers*
Kobie Flowers

Date: January 21, 2022